UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Carmen Marquez Marin,
        Plaintiff

        v.                              Civil No. 05-ds-247-SM (NH)
                                        Civil No. 05-cv-1619-HL (PR)
                                        Opinion No. 2005 DNH 167

Alberto Gonzales,
Attorney General of the United States;
and Humberto "Bert" Garcia,
U.S. Attorney for the Dist. of Puerto Rico,
        Defendants

## O R D E R

Plaintiff, Carmen Marquez Marin, was formerly employed as an Assistant United States Attorney in the District of Puerto Rico. After her employment was terminated she filed this suit against Alberto Gonzales, the Attorney General of the United States, and Humberto "Bert" Garcia, the United States Attorney for the District of Puerto Rico.  In count one of her complaint, plaintiff asserts that she was the victim of unlawful discrimination based upon her gender and national origin.  As to that count, she has named the Attorney General, in his official capacity, as the sole defendant.

In count two of her complaint, Marquez asserts that the United States Attorney, Humberto Garcia, terminated her employment under conditions that violated her constitutionally protected right to due process.  See generally Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).  That is, Marquez says that in connection with her discharge, Garcia circulated false and defamatory statements about her and refused to provide her with a hearing at which she might clear her name.  And, finally, in count three of her complaint, Marquez asserts that Garcia also violated her constitutionally protected rights when he terminated her employment without following internal personnel policies.

Garcia moves to dismiss both counts against him.  He says the claims asserted are preempted by the Civil Service Reform Act of 1978 ("CSRA") and, therefore, this court lacks subject matter jurisdiction.  Moreover, says Garcia, even if those claims were not preempted, he would still be entitled to the protections afforded by qualified immunity.  Plaintiff objects.

**Standard of Review**

I.   <u>Lack of Subject Matter Jurisdiction</u>.

When faced with a motion to dismiss for lack of subject
matter jurisdiction under Rule 12(b)(1), the plaintiff, as the
party invoking the court's jurisdiction, has the burden to
establish, by competent proof, that jurisdiction exists.  <u>See</u>
<u>Bank of New Hampshire v. United States</u>, 115 F. Supp. 2d 214, 215
(D.N.H. 2000).  In determining whether that burden has been met,
the court must construe the complaint liberally, "treating all
well-pleaded facts as true and indulging all reasonable
inferences in favor of the plaintiff."  <u>Aversa v. United States</u>,
99 F.3d 1200, 1210 (1st Cir. 1996).  Importantly, however, the
court may also consider whatever evidence the parties have
submitted, such as depositions, exhibits, and affidavits, without
converting the motion to dismiss into one for summary judgment.

> In a situation where the parties dispute the predicate
> facts allegedly giving rise to the court's
> jurisdiction, the district court will often need to
> engage in some preliminary fact-finding.  In that
> situation, the district court enjoys broad authority to
> order discovery, consider extrinsic evidence, and hold
> evidentiary hearings in order to determine its own
> jurisdiction.  In such a case, the district court's
> findings of fact will be set aside only if clearly
> erroneous.

Skwira v. United States, 344 F.3d 64, 71-72 (1st Cir. 2003)
(citation and internal quotation marks omitted).  See also
Valentin v. Hosp. Bella Vista, 254 F.3d 358, 365 (1st Cir. 2001).

II.   Failure to State a Claim.

When ruling on a motion to dismiss under Rule 12(b)(6), the
court must "accept as true the well-pleaded factual allegations
of the complaint, draw all reasonable inferences therefrom in the
plaintiff's favor and determine whether the complaint, so read,
sets forth facts sufficient to justify recovery on any cognizable
theory." Martin v. Applied Cellular Tech., Inc., 284 F.3d 1, 6
(1st Cir. 2002).  Dismissal is appropriate only if "it clearly
appears, according to the facts alleged, that the plaintiff
cannot recover on any viable theory." Langadinos v. American
Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000).  See also Gorski
v. N.H. Dep't of Corr., 290 F.3d 466, 472 (1st Cir. 2002) ("The
issue presently before us, however, is not what the plaintiff is
required ultimately to prove in order to prevail on her claim,
but rather what she is required to plead in order to be permitted
to develop her case for eventual adjudication on the merits.")
(emphasis in original).

Notwithstanding this deferential standard of review, however, the court need not accept as true a plaintiff's "bald assertions" or conclusions of law.  See Resolution Trust Corp. v. Driscoll, 985 F.2d 44, 48 (1st Cir. 1993) ("Factual allegations in a complaint are assumed to be true when a court is passing upon a motion to dismiss, but this tolerance does not extend to legal conclusions or to 'bald assertions.'") (citations omitted). See also Chongris v. Board of Appeals, 811 F.2d 36, 37 (1st Cir. 1987).

Here, in support of his motion to dismiss, Garcia references various personnel documents relating to Marquez's employment and the letter of discharge.  Typically, a court must decide a 12(b)(6) motion to dismiss exclusively upon the allegations set forth in the complaint (and any documents attached to that complaint) or convert the motion into one for summary judgment. See Fed. R. Civ. P. 12(b).  There is, however, an exception to that general rule:

> [C]ourts have made narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint.

Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993) (citations
omitted).  See also Beddall v. State Street Bank & Trust Co., 137
F.3d 12, 17 (1st Cir. 1998).  Since plaintiff does not dispute
the authenticity of the documents upon which Garcia relies, the
court may properly consider those documents without converting
Garcia's motion into one for summary judgment.

### Background

In December of 2001, Marquez began working at the United
States Attorney's Office for the District of Puerto Rico, under a
temporary, 14-month appointment.  A little more than a year
later, in January of 2003, after the FBI completed a background
investigation, plaintiff's position was converted to a non-
temporary one.  The "Notification of Personnel Action" provided
to Marquez informed her that her appointment was "subject to the
completion of a two-year trial period beginning 01/23/2003."
Exhibit 5 to Affidavit of Carmen Pura Lopez.  It also notified
plaintiff that "[w]hile serving the trial period, you may be
removed without cause or the right to appeal."  Id.

On August 27, 2004, Marquez was called to a meeting with
Garcia.  When she arrived, she says the entire supervisory staff
of the office was present.  In front of those present, Garcia
handed plaintiff a letter, dated August 26, 2004, from the
Director of the Executive Office for United States Attorneys,
informing her that her employment was terminated, effective
immediately.  Among other things, that letter (the contents of
which plaintiff attributes to Garcia) cited Marquez's
"misconduct," "pattern of dishonesty," and "poor attitude toward
work . . . [which] undermined office morale and adversely
affected the ability of [the] office to perform its mission," as
grounds for her termination.  Id., Exhibit 7.  Marquez alleges
that the letter contained false and defamatory statements and
claims that it was circulated to all supervisors in the office
(including those who were not in her chain of command).
Complaint at para. 8.18.  But, because her employment was
terminated within the two-year trial period, Marquez was not
entitled to appeal that decision, nor was she entitled to any
sort of pre-termination hearing.

Immediately after receiving the letter, Marquez was escorted
to her office so she could gather her personal belongings before
leaving the building.  Although she was no longer in the office,
Marquez claims that, "on information and belief, following the
dismissal, supervisors at the office . . . proclaimed that
plaintiff was dismissed because she was not fulfilling the
mission of the office and was affecting the 'morale' of the
office by complaining too much."  Complaint at para. 8.21.

## Discussion

I.   Count Three – Procedural Deficiencies Associated with
     Terminating Plaintiff's Employment.

Count three of plaintiff's complaint is pled as a <u>Bivens</u>
action, seeking damages from Garcia for having allegedly violated
Marquez's constitutional rights by failing to follow "applicable
regulations and procedures of the United States Attorneys'
offices."  Complaint at para. 12.1.  Specifically, plaintiff
claims Garcia failed to afford her either a plan of improvement
of performance (known as a "PIP"), or thirty days advance notice
of her dismissal – procedural benefits to which she says she was
entitled.  <u>Id</u>. at para. 12.3.  In response to Garcia's motion to
dismiss and in an effort to avoid preemption of that claim by the

8

CSRA, plaintiff has informally amended that count, notifying the court that she has waived any claim for monetary damages and now seeks only "equitable and declaratory relief on [that] claim." Plaintiff's memorandum at 4 n.3.

Independent of the preemption question, however, count three of plaintiff's complaint suffers from a fundamental defect. Although brought pursuant to Bivens, see complaint at para. 3.4, count three does not identify any federally protected constitutional right that was violated by Garcia's alleged failure to follow internal rules governing the discharge of an Assistant United States Attorney. Consequently, even though it seeks only equitable relief, count three of plaintiff's complaint fails to state a viable Bivens claim and must be dismissed. See, e.g., Bivens, 403 U.S. at 400 (Harlan, J., concurring)("However broad a federal court's discretion concerning equitable remedies, it is absolutely clear . . . that in a nondiversity suit a federal court's power to grant even equitable relief depends on the presence of a substantive right derived from federal law.").

II.  <u>Count Two — Due Process Violation and CSRA Preemption</u>.

In count two of her complaint, plaintiff asserts that the circumstances surrounding her termination — that is, Garcia's publication of false and defamatory statements about her, combined with the denial of any hearing at which she might attempt to refute those charges and clear her name — deprived her of a constitutionally protected liberty interest.  The Court of Appeals for the First Circuit recently described the nature of such a claim.

> Even where an employee has no property interest in continued employment, there are nonetheless circumstances in which a public employer's decision to discharge an employee may damage the employee's reputation to such an extent that his liberty to seek another job is significantly impaired.  Although neither the termination of employment nor statements that might be characterized as defamatory are, by themselves, sufficient to implicate the liberty interest, where a public-sector employer creates and disseminates a false and defamatory impression about an employee in connection with the employee's discharge, the Due Process Clause requires the employer to provide the employee with an opportunity to dispute the defamatory allegations, and the employer's failure to do so is actionable under § 1983 [or <u>Bivens</u>].

<u>Burton v. Town of Littleton</u>, 426 F.3d 9, 14–15 (1st Cir. 2005) (citations and internal punctuation omitted).

Garcia moves to dismiss that count as well, asserting that the claim is preempted by the CSRA.  Alternatively, says Garcia, even if the manner by which he terminated Marquez's employment <u>did</u> violate her constitutionally protected rights, he is, nevertheless, entitled to the protections afforded by qualified immunity.  Because count two of plaintiff's complaint fails to state a viable cause of action and because, even if it did allege each of the essential elements of a viable claim, Garcia would be entitled to qualified immunity, the court need not determine whether plaintiff's claim is preempted by the CSRA.

A.   <u>Count Two Fails to State a Claim</u>.

A claim of the sort advanced by plaintiff in count two involves five essential elements: (1) the alleged statements must seriously damage the former employee's reputation, honor, integrity, or standing in the community; (2) the former employee must dispute the statements as false; (3) the stigmatizing statements must have been intentionally published by the government; (4) those stigmatizing statements must have been made in conjunction with a change in the employee's legal status, such as demotion or termination; and (5) the government must have

11

refused to honor the employee's request for an opportunity to clear her name.  See Wojcik v. Mass. State Lottery Comm'n, 300 F.3d 92, 103 (1st Cir. 2002).  Count two of plaintiff's complaint fails to assert that the allegedly defamatory statements contained in the dismissal letter were "published" to the degree necessary to state a viable cause of action.

In her complaint, Marquez alleges only that Garcia was responsible for sharing the contents of the allegedly defamatory letter with the supervisors in the office.  Although she suggests that, following her departure, some of those supervisors "proclaimed that plaintiff was dismissed because she was not fulfilling the mission of the office and was affecting the 'morale' of the office by complaining too much," complaint at para. 8.21, she does not allege that Garcia had any role in the dissemination of such information.[1]

---

[1]     Parenthetically, the court notes that those statements – that plaintiff was not fulfilling the mission of the office and that she was adversely affecting morale by complaining too much – are probably not sufficiently severe to "seriously damage [the plaintiff's] standing and associations in [her] community and place [her] good name, reputation, honor, or integrity at stake." Wojcik, 300 F.3d at 103 (quoting Board of Regents v. Roth, 408 U.S. 564, 573 (1972)).

Even construing the allegations in the complaint liberally, at best plaintiff claims that Garcia shared the allegedly false and defamatory contents of the letter with the supervisory staff of the United States Attorney's Office (including some supervisors who were not directly in Marquez's chain of command). She does not, for example, allege that Garcia published those statements "to members of the public or to prospective employers," <u>Silva v. Worden</u>, 130 F.3d 26, 33 (1st Cir. 1997), nor does she assert that the termination letter is a public document.

Simply stated, the conduct ascribed to Garcia does not constitute the type of "publication" that gives rise to a viable claim that plaintiff's constitutionally protected liberty interest was violated.  Unlike a common law defamation claim, which requires only that the defamatory statements be "published" to a third party, a constitutional liberty interest claim requires that the defamatory statements be more broadly circulated.

> [I]n a common law defamation action, any publication of
> false and defamatory material might be sufficient, but
> in the context of the liberty interest protected by the
> Fourteenth Amendment, plaintiff was required to show
> broader publication.

Burton, 426 F.3d at 16 (quoting Ratliff v. City of Milwaukee, 795
F.2d 612, 626-27 (7th Cir. 1986)).   See also Beitzell v. Jeffrey,
643 F.2d 870, 879 (1st Cir. 1981) (noting that ordinarily a
plaintiff is deprived of his or her liberty interest only "when
the [government] has made seriously defamatory charges in public,
for example, at public meetings or to the press.").

     Garcia's decision to (allegedly) circulate the termination
letter to the supervisory staff members in the United States
Attorney's Office "is not the classic type of public
dissemination [the courts] have found actionable."   Burton, 426
F.3d at 16.  As was the case in Burton:

     It would quite stretch the traditional analysis of what
     is public to cover the present situation.

     There is no reason to make that stretch.  Doing so does
     nothing to advance the objectives of the doctrine
     established by [Supreme Court precedent].  That
     doctrine aims to balance two objectives.  It seeks to
     protect employees from serious harm to their future
     employment opportunities.  In order for that harm to
     exist, there must be sufficient dissemination to
     actually create such a risk.  The doctrine, however,
     also seeks to avoid defining public dissemination so
     broadly as to impair the normal functioning of
     personnel operations in public agencies.

14

Id. (emphasis supplied).  Absent an allegation that the allegedly

defamatory statements were made public by defendant or, at a

minimum, that they were disseminated (or even available) to other

employers, count two of plaintiff's complaint necessarily fails

to state a viable claim.  Again, the court of appeals' opinion in

Burton is instructive:

> [W]e have emphasized in our caselaw that public
> dissemination is the sine qua non of a due process
> claim based on reputational harm: The due process
> requirement that an employee be afforded a hearing at
> which he may seek to clear his name is triggered only
> if the dismissal is based upon false and defamatory
> charges that are disseminated by the employer and
> stigmatize the employee so that the employee's freedom
> to obtain alternative employment is significantly
> impaired.  We have thus rejected due process claims
> based on alleged reputational harm where there was no
> dissemination to the public or to prospective employers
> of the details of plaintiff's termination.

Burton, 426 F.3d at 17 (citations and internal punctuation

omitted) (emphasis in original).  See also Beitzell, 643 F.2d at

878.


    B.    Qualified Immunity.

    Even if count two of plaintiff's complaint adequately set

forth the essential elements of a viable claim against Garcia,

and assuming that claim is not preempted by the CSRA, and further
assuming that Garcia did violate her constitutionally protected
rights by not affording her a name-clearing hearing, Garcia would
still be entitled to the protections afforded by qualified
immunity.  Qualified immunity protects "government officials
performing discretionary functions . . . from liability for civil
damages insofar as their conduct does not violate clearly
established statutory or constitutional rights."  Harlow v.
Fitzgerald, 457 U.S. 800, 818 (1982).

        In determining whether a defendant is entitled to qualified
immunity, the court must engage in a two-step inquiry.

>       The first prong is whether the constitutional right in
>       question was clearly established at the time of the
>       alleged violation.  In the second prong, the court
>       employs an "objective reasonableness" test in
>       determining whether a reasonable, similarly situated
>       official would understand that the challenged conduct
>       violated the established right.

Napier v. Town of Windham, 187 F.3d 177, 183 (1st Cir. 1999)
(citation omitted).  When making those inquiries, "the court
should ask whether the agents acted reasonably under settled law
in the circumstances, not whether another reasonable, or more

reasonable, interpretation of the events can be constructed . . .

years after the fact."  Hunter v. Bryant, 502 U.S. 224, 228

(1991).

At the first stage of that inquiry – determining whether the

constitutional right at issue was "clearly established" – courts

must "define the right asserted by the plaintiff at an

appropriate level of generality."  Brady v. Dill, 187 F.3d 104,

115 (1st Cir. 1999).  To qualify as a clearly established right,

"the law must have defined the right in a quite specific manner,

and . . . the announcement of the rule establishing the right

must have been unambiguous and widespread, such that the

unlawfulness of particular conduct will be apparent ex ante to

reasonable public officials."  Id., at 116.  See also Saucier v.

Katz, 533 U.S. 194, 201 (2001) ("[I]f a violation could be made

out on a favorable view of the parties' submissions, the next,

sequential step is to ask whether the right was clearly

established.  This inquiry, it is vital to note, must be

undertaken in light of the specific context of the case, not as a

broad general proposition.") (emphasis supplied); Anderson v.

Creighton, 483 U.S. 635, 640 (1987) ("[T]he right the official is

alleged to have violated must have been 'clearly established' in

a more particularized, and hence more relevant, sense: The

contours of the right must be sufficiently clear that a

reasonable official would understand that what he is doing

violates that right.").  As the Supreme Court recently observed:

> The concern of the immunity inquiry is to acknowledge
> that reasonable mistakes can be made as to the legal
> constraints on particular [governmental] conduct.  It
> is sometimes difficult for an officer to determine how
> the relevant legal doctrine, [here procedural due
> process], will apply to the factual situation the
> officer confronts.  An officer might correctly perceive
> all of the relevant facts but have a mistaken
> understanding as to whether a particular [action] is
> legal in those circumstances.  If the officer's mistake
> as to what the law requires is reasonable, however, the
> officer is entitled to the immunity defense.

Saucier, 533 U.S. at 205.  Ultimately, then, the doctrine of

qualified immunity "gives ample room for mistaken judgments by

protecting all but the plainly incompetent or those who knowingly

violate the law."  Hunter, 502 U.S. at 229 (citation and internal

quotation marks omitted).


One question presented by this case is, then, the level of

specificity with which it is appropriate to define the

constitutional right Marquez claims was violated.  All can agree

18

that when Garcia terminated plaintiff's employment it was clearly
established that the Due Process Clause requires a public
employer to afford its employees an opportunity to dispute any
defamatory allegations that have been publically disseminated in
connection with their discharge.  However, "[a] reasonable
official's awareness of the existence of an abstract right, such
as a right to [a name-clearing hearing under certain
circumstances], does not equate to knowledge that <u>his</u> conduct
infringes the right."  <u>Smith v. Mattox</u>, 127 F.3d 1416, 1419 (11th
Cir. 1997) (emphasis in original).  If the constitutional right
Marquez claims was infringed must necessarily be defined more
precisely than she has done, it seems plain that such a right was
not "clearly established" at the time of her discharge.

A public sector employee is entitled to a name-clearing
hearing only under certain limited circumstances.  To demonstrate
entitlement to such a hearing, the employee must, among other
things, show that "stigmatizing statements or charges [were]
intentionally publicized by the government."  <u>Wojcik</u>, 300 F.3d at
103.  But, says Garcia, the circumstances under which such
statements or charges will be deemed to have been "publicized"

are far from clearly established and, therefore, a reasonable public official in his position would not have understood that his conduct violated Marquez's constitutionally protected liberty interest.  The court agrees.  See, e.g., Bishop v. Wood, 426 U.S. 341, 348 (1976) (noting that the reasons for the plaintiff's termination were communicated orally to him in private and, because that communication "was not made public, it cannot properly form the basis for a claim that [plaintiff's] interest in his good name, reputation, honor, or integrity was thereby impaired."); Beitzell, 643 F.2d at 879 (absent evidence that rumors of plaintiff's drinking habits "became public, that they were made available to other employers or that they interfered with his ability to obtain other employment," plaintiff's liberty interest was not violated).

In support of his position, Garcia points out that his alleged conduct in this case, even if true, would not satisfy even the far more liberal interpretation of "publication" applicable in a common law defamation claim.  Under Puerto Rico law, intra-office communications are subject to a qualified or conditional privilege.  Consequently, liability for defamation

attaches only when false and defamatory intra-office
communications are circulated with malice or when they are
published to outside third parties.  See <u>Pierluissi v.</u>
<u>Coopervision Pharms., Inc.</u>, 694 F. Supp. 1038, 140-42 (D.P.R.
1988).  Here, there is no claim that Garcia acted with malice or
that the termination letter was made available to third parties,
outside the United States Attorney's Office.  Under the law of
Puerto Rico (and several other states), then, Garcia's alleged
conduct would not even constitute actionable defamation.  <u>See</u>
<u>generally</u> <u>Ortiz Algarin v. Federal Express Corp.</u>, 56 F. Supp. 2d
172, 175 (D.P.R. 1999) ("Among the privileged communications so
protected are those from an employer to managers or supervisors
of a discharged employee; to prospective employers informing the
reasons for the discharge of an employee; statements made in an
employee's performance evaluation; and providing references of an
employee to potential employers.").

     Given the fact that Garcia's alleged conduct in this case
would not constitute common law defamation (because the allegedly
false and defamatory statements were not "published" or
"publicized" outside of the office), and given the lack of any

21

federal precedent even suggesting that the publication element of
Marquez's cause of action can be satisfied by intra-office
communications between an employer and supervisory staff members,
the court cannot conclude that the rights asserted by Marquez
were, at the time of her discharge, clearly established.  While
the rights asserted by plaintiff in this case can be stated with
relative ease in broad and general terms, the circumstances under
which those rights would be violated do not lend themselves to
easy summary.  This is particularly true with regard to the
circumstances under which the government may be found to have
made allegedly defamatory statements public.

    Marquez points to no authority in her legal memorandum that
undermines this conclusion.  That is, rather than focus on cases
discussing the specific circumstances under which courts have
concluded that "publication" was sufficient to implicate the
employee's liberty interest, she focuses instead on precedent
that speaks only generally to the fact that a government employee
can be deprived on his or her liberty interest when defamatory
statements are published by his or her employer.  That focus is,
however, far too wide and generalized.  As the Supreme Court has

held, the inquiry into whether a constitutional right is clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." <u>Saucier v. Katz</u>, 533 U.S. at 201.

## Conclusion

Count three of plaintiff's complaint fails to state a viable cause of action under <u>Bivens</u>. <u>See generally</u> Fed. R. Civ. P. 12(b)(6). Even though Marquez has informally amended the count, notifying the court that she seeks only declaratory relief, she has failed to identify any federally protected constitutional right that was violated by Garcia's alleged failure to follow internal personnel policies in connection with plaintiff's discharge.

Count two of plaintiff's complaint also fails to state a viable cause of action. If plaintiff had, for example, justifiably alleged that Garcia published the allegedly defamatory comments "to the public or to prospective employers," <u>Silva v. Worden</u>, 130 F.3d 26, 33 (1st Cir. 1997), she would state a viable cause of action. Her complaint, however, merely alleges

23

that Garcia published those comments to the supervisory personnel within the United States Attorney's Office.  While it might be debatable whether that conduct is sufficient to support a common law defamation claim (if inter-office communications were not privileged under state law), such limited publication is, as a matter of law, insufficient to form the basis of a viable due process/liberty deprivation claim.  See, e.g., Burton, supra.

Moreover, even if that limited type of publication were sufficient (and Garcia did violate Marquez's constitutionally protected liberty interests by allegedly sharing defamatory comments with supervisory staff members), Garcia would still be entitled to the protections afforded by qualified immunity. Among other things, Marquez's inability to point to any precedent supporting her view that the limited publication she describes is sufficient to state a viable claim demonstrates that the law in this area is not well settled.  Consequently, the court cannot conclude that, when Marquez was discharged, it was "clearly established" that a government employer "publishes" allegedly defamatory remarks when he or she does no more than share them in the context of an agency meeting involving supervisory staff.

Even crediting all of plaintiff's factual allegations as true, it is clear that a reasonable federal employer, presented with the same facts and circumstances, would not have realized that the decision to provide other members of the supervisory staff with copies of Marquez's dismissal letter, without affording her a name-clearing hearing, would constitute a violation of her constitutionally protected liberty interest. Garcia is, therefore, entitled to qualified immunity.  <u>See generally</u> <u>Hunter</u>, 502 U.S. at 229.

For the foregoing reasons, defendant Humberto Garcia's motion to dismiss counts two and three of plaintiff's complaint (document no 4) is granted.

**SO ORDERED.**

Steven J. McAuliffe
Chief Judge

December 19, 2005

cc:  Judith Berkan, Esq.
     Mary Jo Mendez-Vilella, Esq.
     Carole M. Fernandez, Esq.
     Frances Rios De Moran, Clerk, USDC, PR
     Nivea Ocasio, USDC, PR
     Olga Vega, USDC, PR