UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Carmen Marquez Marin,
      Plaintiff

                        N.H. Civil No. 05-ds-247-SM
      v.                    P.R. Civil No. 05-cv-1619-HL
                        Opinion No. 2007 DNH 124

Peter D. Keisler,
Acting United States Attorney General[1],
      Defendant

**O R D E R**

Following a seven day civil trial, the jury returned a
verdict in favor of plaintiff, Carmen Marquez Marin ("Marquez"),
concluding that her employer, the United States Department of
Justice (the "DOJ"), unlawfully retaliated against her (i.e.,
terminated her employment) because she engaged in protected
activity.  It awarded Marquez $136,325.00 in compensatory
damages.  Interestingly, however, although the parties stipulated
that Marquez's lost pay, properly calculated, amounted to
$180,420.00, the jury declined to award her any back pay as part
of the compensatory award.

---

    [1]  On September 17, 2007, Hon. Peter D. Keisler was named
Acting Attorney General of the United States.  This suit was
brought in 2005 against the then Attorney General, Alberto
Gonzalez, but in his official capacity.  Accordingly, the current
head of the Department of Justice is substituted as the party-
defendant.

Pending before the court are plaintiff's motion for post-trial equitable relief (in the form of back pay and either reinstatement or front pay), as well as her motion for attorneys' fees.  The former is granted in part and denied in part, and the latter is granted.

**Discussion**

I.   Equitable Remedies.

     A.   Back Pay.

Marquez urges the court to disregard the jury's verdict on back pay damages and, in addition to the compensatory damages the jury did award, give her that amount of back pay which the parties stipulated she lost ($180,420).  In support of her argument, Marquez asserts that the court submitted the question of back pay damages to the jury on a purely advisory basis, and should now exercise its own judgment differently.  See generally Fed. R. Civ. P. 39(c).

On that point, plaintiff is incorrect.  During various pre-trial conferences, and during the charging conference, the parties and the court discussed whether the court should submit the question of front pay damages to the jury on an advisory basis.  In the end, however, the court decided not to submit that

2

issue (or any other) to the jury for an advisory verdict, instead reserving to itself any necessary decisions regarding the equitable remedies of front pay and/or reinstatement.

The availability of back pay in a given case is committed to the court's discretion.  See generally Albemarle Paper Co. v. Moody, 422 U.S. 405 (1975).  As is customary in this circuit, in the exercise of its discretion, the court determined that plaintiff should be permitted to present her claim for back pay to the jury.  See, e.g., Arrieta-Colon v. Wal-Mart Puerto Rico, Inc., 434 F.3d 75, 91 (1st Cir. 2006) ("[I]n this circuit when the jury is asked, as here, to resolve issues of liability and compensatory damages, the issue of back pay is normally decided by the jury as well.").  See also Santiago-Negron v. Castro-Davila, 865 F.2d 431, 441 (1st Cir. 1989) ("[W]here the issues of liability and compensatory damages will be determined by a jury, back pay shall be considered by the jury as one of the items of compensatory damages.").

Accordingly, Marquez presented evidence supportive of her claim for back pay, including a stipulation regarding the amount at issue.  But, the jury responded by not awarding damages for that particular item of loss.  While it is impossible to know

3

exactly why the jury decided not to award Marquez back pay
damages, one plausible explanation is that the jury decided that
Marquez, a probationary employee, would likely have been let go
anyway, for legitimate reasons, even absent the found
discriminatory animus.  Marquez disputes that interpretation,
pointing out that this was not a "mixed motive" case and, given
its verdict, the jury necessarily rejected the government's
assertion that Marquez was fired for entirely non–discriminatory
reasons.  Both points are correct.  But, the fact that the jury
was not instructed on mixed motive did not prevent it from
concluding, for the purpose of awarding damages, that Marquez, a
probationary employee, was not likely to have been retained as a
permanent employee.  In other words, the jury could have
reasonably concluded that even if the DOJ had not unlawfully
discriminated against her, it likely would have still terminated
her employment for the legitimate reasons argued by the
government throughout the trial.  Accordingly, the jury could
reasonably have awarded substantial compensatory damages for the
undeserved emotional harm inflicted on Marquez by the DOJ's
discriminatory action, but also declined to award damages for
lost pay.

The jury's verdict in favor of Marquez on her retaliation claim reflects its considered judgment that there was a causal connection between her having engaged in protected activity and the DOJ's decision to terminate her employment.  But, given the evidence introduced at trial, the jury could also have reasonably concluded that, for good reasons, senior managers in the office did not like Marquez's attitude, were not impressed with her work or work ethic, and/or concluded that she was not a good "fit" for the office.  Consequently, the jury could have reasonably concluded that her probationary status simply would not have matured into permanent employee status.  The evidence presented supports an inference that the DOJ would have let Marquez go before her probationary period expired, even absent the unlawful discrimination against her.

Marquez bears a heavy burden.  To successfully overturn the jury's verdict on back pay damages, she must demonstrate that, taking all reasonable inferences from the trial evidence in favor of that verdict, "a reasonable person could not have reached the conclusion of the jury."  White v. N.H. Dep't of Corrections, 221 F.3d 254, 259 (1st Cir. 2000).  See generally Fed. R. Civ. P. 50. See also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 149–51 (2000).

Here, the jury's intent is fairly evident.  It was fully and properly instructed on the issue of back pay damages.  Moreover, when the jury returned its verdict awarding no back pay damages, the court submitted a special question inquiring about its verdict in that respect.  The court also provided the jury with supplemental instructions on the issue before resubmitting the question of back pay damages.  The jury confirmed its verdict. Given that the jury was properly instructed on the issue, that it reconsidered the question, that it is presumed to have followed the court's instructions, and that it's verdict is consistent with a reasonable assessment of the import of the evidence presented at trial, Marquez has failed to carry her burden with regard to overturning that verdict.

B.  <u>Reinstatement</u>.

Marquez also asks that, in the exercise of its equitable powers, the court order the DOJ to reinstate her to the job from which she was unlawfully fired.  As the Supreme Court has made clear, the remedies available to Marquez, as the prevailing plaintiff, should be consistent with the express goals of Title VII, which include "eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination."  <u>Albemarle</u>, 422 U.S. at 421.  And, as the

court of appeals for this circuit has noted, "reinstatement is
the 'overarching preference' among all equitable remedies under
the [Act], as it most efficiently furthers 'the dual goals of
providing full coverage for the plaintiff and of deterring such
conduct by employers in the future.'"  Quint v. A.E. Staley Mfg.
Co., 172 F.3d 1, 19 (1st Cir. 1999) (quoting Selgas v. American
Airlines, Inc., 104 F.3d 9, 12 (1st Cir. 1997)).

     Although the DOJ objects to Marquez's reinstatement, it has
not offered any compelling reasons why she could not be
successfully returned to the position she would have occupied had
the DOJ not unlawfully discriminated against her.  Accordingly,
Marquez shall be reinstated forthwith to the probationary
position she held immediately before the DOJ's decision to
unlawfully terminate her employment.  To the extent Marquez
asserts that she should be reinstated to a permanent (i.e., non-
probationary) position, the court disagrees.  While the remedy
afforded Marquez might ultimately prove to be something of a
hollow victory, nevertheless, she is entitled to be restored to
the position she held.  She is not entitled to more in that
respect.

Reinstatement, even to a probationary status, serves the important function of negating the DOJ's unlawful and injurious conduct in a practical as well as theoretical way.  The court trusts that the current United States Attorney and her administration will proceed in a lawful, fair, non-vindictive, and non-discriminatory manner with regard to Marquez's employment and future career.

    C.   <u>Expungement of Termination Letter</u>.

The evidence produced at trial persuasively demonstrated that the charges leveled against Marquez, and offered as justification by the DOJ for her termination, were patently without merit.  She was not let go because she did not "fit in," or because supervisors thought her work not up to the very high standards rightfully demanded by the Department of Justice. Rather, she was unsupportably vilified and accused of having engaged in a "<u>pattern</u> <u>of</u> <u>dishonesty</u> and misconduct."  Those charges were, at best, unfair exaggerations bearing only the most passing and strained relationship to reality, and at worst, were trumped up.

Marquez may not have endeared herself to some of her superiors — her personality was said to be assertive and

demanding (though that is hardly an unusual trait among successful litigators).  But, on the other hand, she seemingly enjoyed unqualified and enthusiastic support among the federal and commonwealth law enforcement personnel with whom she worked. Indeed, law enforcement officers testified persuasively and emphatically that it was the new and inexperienced Marquez who quickly established a reputation as a "go-to" prosecutor, while her more experienced supervisors seemed content to let their cases languish unattended.  Marquez worked long hours, was always available, and in at least one important case, she revived a dormant investigation, organized it, reinvigorated it, and successfully obtained numerous indictments.  She was enthusiastically credited with having made the case and she received a special invitation from the DEA to go to Washington, D.C., as part of the team that earned a prestigious national award from the Attorney General of the United States that recognized outstanding law enforcement work on that very case.

The evidence did not support the charges that Marquez engaged in a pattern of dishonesty or misconduct.  Why the DOJ felt the need to level those charges remains a mystery, given that they were not accurate and, as a practical matter, because Marquez was a probationary employee, there was no need to

9

demonstrate "cause" to terminate her employment.  Those charges
were not only unwarranted and unfair, but certainly
professionally devastating and no doubt personally devastating as
well.

Marquez moves the court to exercise its equitable authority
to order that the United States Attorney's letter recommending
her termination, as well as the termination letter itself, which
include the offending and unjustified accusations, be removed
from her Official Personnel File and any other government files
into which they might have found their way.  Given the evidence
introduced at trial, as well as the jury's verdict in her favor,
Marquez is entitled to no less.

II.  <u>Attorneys' Fees</u>.

Invoking her status as the "prevailing party," Marquez seeks
an award of approximately $425,000 in costs and attorneys' fees.
The DOJ does not dispute the fact that Marquez is a prevailing
party and, as such, is entitled to an award of reasonable costs
and attorneys' fees.  <u>See generally</u> 42 U.S.C. § 2000e-5(k).  <u>See
also</u> <u>Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.</u>, 489
U.S. 782, 791-92 (1989).  It does, however, assert that the fees
charged by Attorney Berkan are higher than those prevalent in the

community for similar services provided by lawyers of reasonably comparable skill, experience, and reputation.  The DOJ also asserts that Attorney Berkan and Attorney Mendez spent an inordinate amount of time on some aspects of case preparation.  And, finally, the DOJ says some of the costs and expenses incurred by Marquez's counsel were inadequately documented, unnecessary, and/or generally not recoverable.  The court disagrees.

In this circuit, the preferred method of calculating fee awards is the "lodestar method," by which "the number of hours reasonably expended on the litigation [are] multiplied by a reasonable hourly rate."  Coutin v. Young & Rubicam Puerto Rico, Inc., 124 F.3d 331, 337 (1st Cir. 1997)(quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)).  See also In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litigation, 56 F.3d 295, 305 (1st Cir. 1995).  Plaintiff is also entitled to an award of reasonable attorneys' fees incurred in the preparation of the fee application, and supplemental applications.  Brewster v. Dukakis, 3 F.3d 488, 494 (1st Cir. 1993).  Of course, whether a request for attorneys' fees is reasonable depends, in part, upon the degree of success obtained.

Urban v. Jefferson Cty. Sch. Dist., 89 F.3d 720, 729 (10th Cir.
1996) (citing Hensley, 461 U.S. at 436).

Marquez bears the burden of providing sufficiently detailed
contemporaneous records of the time her attorneys spent and the
tasks they performed to allow the court to determine their
reasonableness.  See Tennessee Gas Pipeline Co. v. 104 Acres of
Land, 32 F.3d 632, 634 (1st Cir. 1994).  She has met that burden
by submitting comprehensive records detailing the effort expended
by her legal counsel, as well as several affidavits in support of
her petition for costs and attorneys' fees.

Having reviewed Marquez's submissions and the DOJ's
objection, the court concludes that the hourly rates charged by
Attorney Berkan and Attorney Mendez are both reasonable and
consistent with those customarily charged by practitioners of
comparable skill and expertise in Puerto Rico.  See Andrade v.
Jamestown Housing Auth., 82 F.3d 1179, 1190 (1st Cir. 1996) ("In
determining a reasonable hourly rate, the Supreme Court has
recommended that courts use 'the prevailing market rates in the
relevant community' as the starting point.").  The court also
concludes that the fees charged as well as the number of hours
worked by plaintiff's counsel are reasonable and appropriate in

12

light of the complexity of this case, the special qualifications,
expertise, and experience of counsel, the volume of work
performed by counsel, the substantial economic risk assumed by
counsel in taking this case, the length of time between the
filing of plaintiff's complaint and the jury's resolution of her
claim (during which time counsel received no compensation), and
the ultimate successful resolution of this matter.  See generally
Hensley, 461 U.S. at 448–49.

Attorney Berkan is well known in the district as a
particularly capable practitioner in the area of civil rights.
She often serves on continuing legal education panels designed to
assist federal practitioners.  This case required a great deal of
investigatory work and no doubt proved difficult in that,
essentially, Attorneys Berkan and Mendez had to develop a case
against the United States Attorney's Office using other federal
prosecutors and law enforcement officials as witnesses.
Attorneys Berkan and Mendez also assumed a substantial economic
risk in taking Marquez's case — not just the usual risk of
failure and substantial uncompensated work, but also the very
real risk associated with litigating against the government.  As
an opponent in civil litigation, the government has virtually no
economic incentive to keep litigation costs down, which almost

always translates into far more legal effort being required than
does litigating against entities who also have to pay legal
bills.  And, this particular case predictably required a long
time to complete, during which period counsel not only were not
being paid for any of their work, but were also expending tens of
thousands of dollars of their own funds to cover unavoidable
litigation expenses that Marquez could not afford to pay in
advance.

### Conclusion

For the foregoing reasons, plaintiff's motion for post-trial
equitable relief (document no. 42) is granted in part and denied
in part.  Her motion for attorneys' fees and costs (document no.
44) is granted.

Marquez's motion for post-trial equitable relief is granted
to the extent she seeks reinstatement to her former position in
the United States Attorney's Office as a probationary employee,
with the same status, rights, and privileges she had as of the
date she was unlawfully terminated (i.e., with whatever time
remains on her probationary status, calculated as of that date).
It is also granted to the extent she seeks an order directing the
removal of the United States Attorney's letter recommending her

termination, as well as the termination letter itself, from her Official Personnel File and from any other government files into which those documents might have been placed.

The DOJ shall reinstate plaintiff to the position she held as a probationary employee immediately prior to her unlawful termination (with credit given for all time previously served as a probationary employee).  It shall also remove from Marquez's Official Personnel File and any other government files into which they might have been placed: (1) the United States Attorney's letter recommending Marquez's termination; (2) the termination letter itself; and (3) all documents referencing or alluding to those letters, or the substantive charges involving a pattern of dishonesty or misconduct leveled against Marquez and supposedly warranting her termination.

The motion is, however, denied to the extent Marquez seeks removal or expungement of other documents that speak unfavorably of her job performance unrelated to the unfounded accusations of a pattern of dishonesty and misconduct.  It is also denied to the extent Marquez seeks reinstatement as a non-probationary employee.  Finally, it is denied to the extent Marquez moves the court to set aside the jury's verdict on back pay damages.

15

Plaintiff's motion for attorneys' fees and costs is, for the reasons set forth above, as well as those articulated in plaintiff's memorandum and supporting documentation, granted. Marquez is, then, awarded a total of $427,491.80 as reasonable costs and attorneys' fees, which includes the following sums:

1.   $320,025.00 in attorneys' fees for the work of Attorney Judith Berkan;

2.   $74,573.80 in attorneys' fees for the work of Attorney Mary Jo Mendez; and

3.   $32,893.00 in litigation costs and expenses.

The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

Steven J. McAuliffe
Chief Judge

October 10, 2007

cc:  Judith Berkan, Esq.
     Mary Jo Mendez-Vilella, Esq.
     Carole M. Fernandez, Esq.
     Clerk of the U.S. District Court
          District of Puerto Rico

16